UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


AARON CANTLEY,

        Petitioner,

v.                                                    Case No. 2:10-cv-154
                                                      HON. GORDON J. QUIST
CATHERINE BAUMAN,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

Petitioner Aaron Cantley filed this petition for writ of habeas corpus challenging his conviction for first degree murder for which he received a life sentence without parole. Petitioner was convicted of killing Tehesah Wallace in her home in Lansing, Michigan. After killing her with a knife, Petitioner took her credit cards, identification and rental car. Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

The petition asserts:

I.  The trial court denied Petitioner's timely and appropriate request for substitute counsel; the trial court denied Petitioner his constitutional right to counsel and the Petitioner is entitled to a reversal of the conviction.

II.  Trial counsel failed to provide effective assistance. Petitioner's federal and state constitutional right to the effective assistance of counsel was violated:

1)  counsel failed to consult or call an expert to show that the DNA evidence pointed to a third person, and failed to present evidence that a third person was the killer.

2)   counsel failed to consult or call an expert to contradict the prosecution's theory that the victim was killed on January 12.

3)   counsel failed to effectively cross-examine witnesses and failed to rebut prosecution witnesses.

4)   counsel disregarded Petitioner's instruction to argue for acquittal instead of second degree murder.

5)   counsel failed to provide effective assistance in various ways.

III.   The verdict was against the great weight of the evidence.

IV.   The trial court erred by admitting unrelated blood stain evidence found in Petitioner's home.

V.   Petitioner was denied effective assistance of trial counsel and appellate counsel which resulted in the waiver of his claim.

VI.   Petitioner was denied the effective assistance of appellate counsel and trial counsel:

A)   Trial counsel failed to contest footprint evidence and appellate counsel failed to argue this issue on appeal.

B)   Trial counsel failed to properly use the appointed investigator and appellate counsel failed to petition the court for an investigator on appeal.

C)   Trial counsel failed to call as a witness Aaron Conley to discredit Detective Duso.

D)   Trial counsel failed to present a defense or other possible theories to the jury which amounted to ineffective assistance of counsel.

E)   Trial counsel failed to properly examine witnesses which amounted to ineffective assistance of counsel.

F)   Trial counsel's violation of attorney client privilege amounted to ineffective assistance of counsel.

G)   Trial counsel's failure to object to the late disclosure of the credit card report and failure to use the report for impeachment amounted to ineffective assistance of counsel.

H)  Appellate counsel failed to properly prepare Petitioner for the *Ginther* hearing.

VII.  It was an abuse of discretion for the trial court to deny the motion for directed verdict and for instructing the jury on first degree murder and felony murder when no evidence supporting the offenses was presented.

VIII.  The trial court abused its discretion by (1) not appointing requested experts or granting an adjournment so the defense could obtain forensic evidence, obtain a DNA expert, and review telephone records, (2) refusing to allow defense counsel to properly cross examine Ms. Cooper, and (3) failing to rule whether deputy Weiss' testimony was admissible before defendant took the stand.

IX.  The prosecutor committed misconduct by knowingly presenting perjured testimony.

X.  The government failed to locate and interview Dave Thompson, the last person who had telephone contact with the victim, and the government committed other misconducts.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court.

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that it was error for the court to deny his request for another substitute counsel. The court had already dismissed one attorney and appointed a second attorney for Petitioner. Petitioner once again requested new counsel. The Michigan Court of Appeals explained why it was appropriate for the court to deny substitute counsel:

> An indigent defendant is guaranteed the right to counsel, but is not entitled to have the attorney of his choice appointed simply by requesting that the trial court replace his original attorney. *Id.* at 462; *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). In order to obtain new counsel, the defendant must demonstrate good cause for the dismissal of his appointed attorney and show that the substitution will not unreasonably disrupt the judicial process. *Id.* "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.* However, "[a] defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *Id.* at 166-167.
>
> Here, the record discloses that defendant had previously obtained new counsel after his first attorney reported that defendant had requested that counsel engage in unethical conduct, including suborning perjury. When defendant requested replacement of his second attorney, the second attorney alleged similar conduct on defendant's part. The trial court found that defendant's desire for a new attorney was based on counsel's refusal to agree to defendant's improper requests, and that appointment of a new attorney for this reason would be futile because defendant was likely to renew his improper requests to any new attorney who was appointed.

Michigan Court of Appeals' Opinion, Docket #49, at 1-2.

Petitioner has failed to present any reason which could have justified a substitution of counsel. The Sixth Amendment guarantees the right to assistance of counsel in criminal proceedings to ensure that the criminal defendant receives a fair trial. *Wheat v. United States*, 486 U.S. 153, 158-159 (1988). The inquiry focuses on the adversarial relationship and whether the defendant is represented by an effective advocate, as opposed to the defendant's personal relationship with his lawyer. *Id.*, *Morris v. Slappy*, 461 U.S. 1 (1983). Petitioner has failed to show that he was represented by an ineffective advocate. The Michigan Court of Appeals' decision is supported by clearly established federal law and based on a reasonable application of the facts.

Petitioner claims that he was denied ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the Petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that

range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at

691.

The Michigan Court of Appeals denied the claims that Petitioner presented on direct

review stating:

### A. Failure to Call Expert Witnesses

Defendant first argues that trial counsel was ineffective for failing to present expert testimony concerning the DNA evidence found at the crime scene. We disagree.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). The failure to call witnesses may constitute ineffective assistance only if it deprives the defendant of a substantial defense that would have affected the outcome of the proceeding. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994).

Here, the record discloses that defendant initially considered having an independent expert examine the DNA evidence. Thereafter, however, the prosecutor and defense counsel met with the forensic scientist who performed the DNA testing to discuss the results. At a pretrial hearing, defense counsel stated that he and defendant had discussed the matter and decided that additional testing was not necessary and would not be in defendant's best interests. At the *Ginther* hearing, counsel testified that defendant had instructed him not to pursue a motion for an independent expert because the laboratory results did not include or exclude defendant as a source of the DNA and were thus inconclusive. Defendant has not presented anything to show that further testing or examination by another expert could have affected the admissibility of the evidence or the test results. The record clearly establishes that the decision not to pursue further DNA testing by an independent expert was a matter of trial strategy, and defendant has not shown that the failure to obtain an independent expert deprived him of a substantial defense.

Defendant also argues that defense counsel was ineffective for failing to consult, or call as a witness, an independent forensic pathologist to dispute the prosecution's contention that the victim was killed on January 12, 2003. We find no merit to this claim. Defense counsel testified that he did consult with an independent pathologist and sent

him the autopsy report and the crime scene photographs. The pathologist advised counsel that the victim had probably been killed two to seven days before the police found her body, but agreed that the timeframe could be longer if the victim was lying in a cold setting. The victim was killed in her home (which sat on a concrete slab) and there was evidence that her furnace was not working around that time. Under the circumstances, it was not unreasonable for counsel to conclude that the pathologist's testimony could bolster the testimony of the prosecutor's expert witness concerning the time of death. Defendant has failed to show that counsel's decision was objectively unreasonable or that he was deprived of a substantial defense.

## B.   Cross-Examination of Witnesses

Defendant next argues that counsel failed to effectively cross-examine various prosecution witnesses. Trial counsel's decisions how and whether to cross-examine witnesses are matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v Hopson*, 178 Mich App 406, 412; 444 NW2d 167 (1989). Ineffective assistance of counsel can take the form of a failure to cross-examine a witness only if the failure deprives the defendant of a substantial defense. *Id.*

Defendant argues that counsel was ineffective for failing to impeach Kenneth Taylor by inquiring about previous "violent altercations" between Taylor and defendant. At the *Ginther* hearing, defendant testified that he had previously punched Taylor in the mouth for taking defendant's compact discs. Counsel's failure to elicit testimony that defendant had previously aggressively attacked Taylor was not objectively unreasonable considering the prosecution's theory that defendant murdered the victim by attacking her following a dispute.

Defendant also asserts that counsel failed to question Taylor about Taylor's request for consideration in his own criminal case in exchange for his testimony in defendant's case. The record indicates that Taylor revealed to the jury that he was incarcerated when he initially approached the police with his story, and the reasons he had decided to testify. At the *Ginther* hearing, it was established that Taylor did not receive any consideration in his own criminal case in exchange for his cooperation in this case. There was an inference at trial that Taylor hoped to obtain favorable treatment when he initially approached the police. Taylor's credibility *might* have been enhanced had the jury been aware that Taylor ultimately did not receive any

consideration, and decided to cooperate anyway. Under the circumstances, defendant has failed to overcome the presumption that counsel's decision not to further pursue this subject was reasonable trial strategy.

Defendant also argues that counsel was ineffective for failing to reveal inconsistencies between another witness's trial testimony and her initial statement to the police. The witness's initial claim that she did not know that defendant possessed the victim's credit card when they went to a store was inconsistent with a portion of her trial testimony. However, defendant has not shown that the failure to disclose this inconsistency deprived him of a substantial defense.

Next, although defendant complains that defense counsel failed to explore whether Takoya Cooper received any consideration in a separate drunk driving case in exchange for her testimony in this case, defendant has not presented any evidence showing that Cooper actually received any consideration in exchange for her testimony. Defendant also asserts that counsel failed to question Cooper about inconsistencies in her testimony relative to whether she knew Kenneth Taylor, but the record discloses that counsel did question Cooper about this matter. Defendant further complains that counsel failed to question Cooper about her alleged mental illness or possible drug problem. Counsel testified at the *Ginther* hearing that he interviewed Cooper before trial and she stated that she was participating in counseling, possibly because of a drug problem. However, Cooper also revealed that defendant and his father had pressured her to change her testimony. Counsel explained that he avoided questioning Cooper about these issues because he believed it was in defendant's best interest to avoid the subject. Under the circumstances, defendant has not demonstrated that counsel was ineffective in his cross-examination of Cooper. In addition, defendant has not demonstrated that Cooper was not competent to testify.

Defendant also argues that counsel was ineffective for failing to question one of the victim's acquaintances about whether the victim was a violent person who had previously stabbed a former boyfriend, Phillip Villapando. Counsel testified that he did not pursue this line of questioning because he thought it was irrelevant because defendant was not claiming self-defense. Although this testimony could have provided some support for defendant's theory that another person killed the victim, its absence did not deprive defendant of a substantial defense. Defendant had already introduced evidence that Villapando had threatened to kill the victim when he got out of prison.

### C. Failure to Challenge Footprint Evidence

Defendant argues that defense counsel was ineffective for failing to properly examine the footprint evidence before trial and for not objecting to this evidence on the ground that it lacked acceptance in the scientific community. In arguing this issue, however, defendant does not discuss the standard for determining the admissibility of scientific evidence generally, or whether counsel could have properly objected to the evidence. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. . . . Failure to brief a question on appeal is tantamount to abandoning it." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

In addition, defendant provides no indication, through expert evaluation or otherwise, that the footprint evidence is not generally accepted in the scientific community or was otherwise improperly admitted. Thus, defendant has not established the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999); *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818, 2003. We therefore reject this claim of error.

### D. Failure to Seek Acquittal

Defendant argues that counsel was ineffective for disregarding his instructions to argue only for an acquittal. At the *Ginther* hearing, counsel explained that defendant wanted to pursue a strategy of arguing for an acquittal, not for a lesser second-degree murder conviction, but that defendant wavered on this issue during trial.

As a general rule, without the defendant's consent, "a complete concession of defendant's guilt . . . constitutes ineffective assistance of counsel." *People v Krysztopaniec*, 170 Mich App 588, 596; 429 NW2d 828 (1988). However, "[a]n attorney may well admit guilt of a lesser included offense in hopes that due to his candor the jury will convict of the lesser offense instead of the greater." *People v Shultz*, 85 Mich App 527, 532; 271 NW2d 305 (1978); see also *People v Emerson (After Remand)*, 203 Mich App 345, 349; 512 NW2d 3 (1994) (declining to "second-guess counsel's trial tactic of admitting guilt of a lesser offense").

Here, defense counsel did not concede defendant's guilt, even to the lesser offense of second-degree murder. He instead stated that

defendant had maintained his innocence of all charges. In his closing argument, counsel stated that defendant had an alibi, argued that several prosecution witnesses had lied during their testimony, argued that the DNA evidence pointed to an unidentified person as the killer, and stated that there was no evidence of either premeditation or a murder during the commission of a felony.

In sum, the record does not support defendant's claim that defense counsel failed to seek an acquittal or improperly conceded defendant's guilt.

### E. Failure to Request a Cautionary Jury Instruction

Defendant argues that defense counsel was ineffective for failing to request a drug addict jury instruction, CJI2d 5.7, in light of Taylor's admitted use of marijuana and other substances. Defense counsel admitted that he was unaware that such an instruction existed. However, this Court has held that an instruction regarding the special scrutiny that ought to be given to the testimony of an addict-informant should be given, on request, only where the testimony of the informant is the only evidence linking the defendant to the offense. *People v Griffin*, 235 Mich App 27, 40; 597 NW2d 176 (1999); *People v McKenzie*, 206 Mich App 425, 432; 522 NW2d 661 (1994). Here, Taylor's testimony was corroborated by Tikesha Thompson, Christina Bruce, and Takoya Cooper. In addition, physical evidence linked defendant to the crime. Thus, the trial court was under no obligation to give the instruction had it been requested. Therefore, defendant cannot show that, but for counsel's mistake, the outcome of his trial would likely have been different.

### F. Failure to Call Witnesses

Defendant argues that defense counsel was ineffective for failing to call as a witness a woman who allegedly told the police during the investigation that the victim was seeing a man in Flint who had children. Defendant asserts that this information would have supported his theory that Kenneth Taylor, who has children, may have killed the victim. However, there is no evidence supporting defendant's theory that Taylor and the victim had an intimate relationship, or that there was any hostility between them. Thus, defendant has not shown that the failure to call this witness deprived him of a substantial defense.

Michigan Court of Appeals' Opinion, Docket #49, at 4-7.

The Michigan Court of Appeals applied the correct standard and made a reasonable determination that Petitioner received effective assistance of counsel. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Further, it is the opinion of the undersigned that Petitioner has failed to establish that he received ineffective assistance of appellate counsel for failing to raise on appeal issues that lack merit.

Petitioner argues that the verdict was against the great weight of the evidence. Petitioner fails to raise a constitutional issue in asserting this claim. This court does not weigh the evidence presented in a state criminal trial or make factual determinations. Rather, a habeas court analyzes issues involving constitutional claims or challenges based upon federal law that could apply in a state criminal trial. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Therefore, it appears that this portion of Petitioner's argument should be dismissed. The Michigan Court of Appeals rejected this claim finding that the evidence presented supported the verdict.

> In the instant case, the prosecution presented footprint, fingerprint, and DNA evidence linking defendant to the crime scene, as well as evidence that defendant possessed the victim's identification card, credit cards, and rental car shortly after the crime. The evidence also showed that defendant had a relationship with the victim, and two witnesses testified that defendant admitted that he had killed the victim. In addition, contrary to what defendant asserts, the forensic evidence supported the prosecutor's theory that the victim was killed on January 12, 2003. Defendant has not demonstrated any inconsistencies in the testimony or evidence presented that would contradict indisputable physical facts or otherwise show that the

> evidence and testimony was so impeached that it was deprived of its probative value. The trial court did not abuse its discretion in denying defendant's motion for a new trial.

Michigan Court of Appeals' Opinion, Docket #49, at 2.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988). In this case, the evidence presented at trial, in the light most favorable to the prosecution, supported the guilty verdict of first degree murder.

Petitioner argues that the trial court erred in admitting blood stain evidence found at his home that was unrelated to the crime. The prosecutor questioned Petitioner's father about the blood stains to show bias or attempts to disrupt the investigation. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a Petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v.*

> *Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29
> (1984). Today, we reemphasize that it is not the province of a federal
> habeas court to reexamine state-court determinations on state-law
> questions. In conducting habeas review, a federal court is limited to
> deciding whether a conviction violated the Constitution, laws, or
> treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423
> U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the Petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial
> evidence constitutes a denial of fundamental fairness is whether the
> evidence is 'material in the sense of a crucial, critical highly
> significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir.
> 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir.
> 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. In the opinion of the undersigned, Petitioner has not shown constitutional error.

Respondent asserts that the remaining claims presented by Petitioner should be dismissed because of procedural default. The remaining claims were first presented in Petitioner's motion for relief from judgment. The trial court denied the claims under MCR 6.508(D)(3). The Michigan Court of Appeals denied leave to appeal under MCR 6.508(D). The Michigan Supreme court denied leave to appeal under MCR 6.508 (D).

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst*

*v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Under MICH. CT. R. 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. For a claim that could have been raised in a previous appeal, the defendant

is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." MICH. CT. R. 6.508(D)(3)(a)-(b). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000). Because MICH. CT. R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place some time thereafter, MICH. CT. R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

In *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010), the Sixth Circuit, in an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking MICH. CT. R. 6.508(D) are unexplained orders within the meaning of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Such form orders are presumed to uphold or reject the last reasoned decision below. *Guilmette*,(citing *Ylst*, 501 U.S. at 803). As a result, absent an explained decision from some Michigan court applying Rule 6.508(D), the federal court may not invoke procedural default to dispose of a habeas claim that has been rejected by the Michigan courts on the grounds of MCR 6.508(D).

The *Guilmette* case overturns earlier circuit precedent holding that, in cases where the Michigan Supreme Court denies leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," it is sufficiently clear that the supreme court intended to invoke a procedural bar. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383,

388 (6th Cir. 2004); *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004). In *Abela v. Martin*, 380 F.3d 915, 923 (6th Cir. 2004) the Sixth Circuit had held that where the trial court and the Michigan Court of Appeals have issued a merits determination, an order by the Michigan Supreme Court stating that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," does not constitute a clear and express invocation of the procedural bar. *See Abela*, 380 F.3d at 923. Under *Guilmette*, it is apparent that an appellate form order is merely an affirmance of what was done below, not a presumed procedural default.

In his motion for relief from judgment, Petitioner asserted that the trial court erred by denying a motion for a directed verdict and for instructing the jury on first degree murder and felony murder where no evidence was presented to support the verdict. The trial court denied the motion under MCR 6.508(D)(3). Petitioner clearly procedurally defaulted these issues. Moreover, Petitioner cannot show cause or prejudice for the procedural default. The trial court did not err by denying a motion for directed verdict. The evidence presented was sufficient to support the conviction. Similarly, the trial court did not err in instructing the jury on the murder charges. The felony murder conviction was vacated. Petitioner cannot assert any harm resulting from the vacated conviction.

Petitioner's claims asserting a denial of experts on forensic and DNA evidence, refusal to grant an adjournment, failure to allow his counsel proper cross-examination of Ms. Cooper and failing to rule on deputy Weiss' testimony before he took the stand are also procedurally defaulted claims. Petitioner cannot show cause and prejudice to overcome his procedural default of these claims. Counsel explained that he withdrew the DNA expert request after it became clear that the prosecution's DNA evidence results were inconclusive. The trial court did not abuse its

discretion on not granting an adjournment or in controlling the presentation of the evidence. Moreover, Petitioner has not shown a violation of his constitutional rights.

Petitioner claims that the prosecutor committed misconduct by using perjured testimony to convict Petitioner. Petitioner procedurally defaulted these claims. Further, Petitioner has not established that any witness committed perjury and Petitioner has not established that the prosecutor knowingly used perjured testimony during the trial. These claims are procedurally defaulted and lack merit.

Petitioner claims that the prosecutor failed to locate witness Dave Thompson, who was the person that last had telephone contact with the victim. Petitioner procedurally defaulted this issue and Petitioner has not shown how he was prejudiced by the prosecutor's failure to locate this witness.

Petitioner has made a number of claims arguing that his appellate counsel was ineffective for failing to assert the ineffective assistance of trial counsel on several issues. Respondent asserts that Petitioner procedurally defaulted these claims. In *Guilmette*, the Sixth Circuit held that a claim of ineffective assistance of appellate counsel may not properly be deemed procedurally defaulted under MICH. CT. R. 6.508(D) when it is raised for the first time in a motion for relief from judgment under MICH. CT. R. 6.502. The court reasoned that "[t]he procedural-default rule stated by Rule 6.508(D)(3) applies only to claims that could have been brought on direct appeal, and thus – by necessity – it does not apply to claims of ineffective assistance of appellate counsel." The *Guilmette* court therefore found that the invocation of Rule 6.508(D) in such circumstances must be considered a decision on the merits of the claim.

The trial court actually considered the merits of Petitioner's ineffective assistance of counsel claims and found that the claims had no basis in fact:

Defendant claims that both trial and appellate counsel was ineffective for a myriad of reasons. When considering a question of ineffective assistance of counsel, counsel's effective assistance is presumed and the defendant carries a heavy burden of proving to the contrary. *People v Effinger*, 212 Mich App 67, 69 (1995). To succeed on an ineffective assistance claim, the petitioner must show both that his attorney's performance was deficient and that this deficiency prejudiced the defense. *People v Reed*, 449 Mich 3765 (1995). In order to establish prejudice, the defendant must show "a reasonable probability that the outcome would have been different but for counsel's errors." *Strickland v Washington*, 466 US 668, 695 (1984).

Some of the arguments provided by Defendant that his trial counsel was inadequate include trial counsel's failure to: (1) present the jury with a variety of alternative theories to the case, (2) obtain proper footprint and DNA evidence prior to trial, (3) obtain an expert witness regarding the footprint evidence, (4) research into a relevant field to determine if prosecutor's expert witness provided accepted science, (5) properly impeach the testimony of adverse witnesses who were committing perjury, (6) argue more forcefully the existence of multiple prints at the crime scene and the lack of blood in the car Defendant was alleged to have driven, (7) and failure to prepare Defendant properly for his Ginther hearing. Defendant speculates about these and other errors made by trial counsel and their effect on Defendant's trial, but he has not successfully demonstrated that any of these "errors" were the result of anything other than trial strategy. For example, trial counsel may have not wanted to cross-examine witnesses on certain subjects, as this may have been taken unfavorably by the jury or have allowed the prosecution to admit unfavorable evidence. Defendant has also not shown that his defense was prejudiced by trial counsel; given the great weight of evidence against Defendant, the outcome of the trial would not have been different but for trial counsel's errors. Defendant has not borne the heavy burden of successfully showing that his attorney's performance was deficient and that this deficiency prejudiced the Defendant's defense.

Defendant also argues that his appellate counsel was inadequate. First, Defendant argues that his appellate counsel failed to request an investigator at his Ginther hearing. This investigator, Defendant contends, could have investigated whether the prosecution had given a key prosecution witness who had been accused of a hit-and-run accident leniency in exchange for testimony. Defendant supposes that the investigator could have also inquired into witness medical records to check for mental health issues, could have checked school records

for impeachment purposes, and interviewed police for further information. Defendant also argues that his appellate counsel's inadequate argument made on appeal regarding footprint evidence at the crime scene was highly prejudicial. Again, while Defendant speculates as to the many possibilities that could have happened on appeal that did not, Defendant has not clearly indicated any "alleged error" was the result of anything other than trial strategy. Defendant has not borne the burden of showing that appellate counsel's performance was deficient and that this deficiency prejudiced the Defendant's defense.

Ingham County Circuit Court's Order, Docket #51, at 4-5.

In the opinion of the undersigned, the trial court's rulings on Petitioner's ineffective of assistance of trial and appellate counsel claims were not unreasonable. Petitioner's claims should be denied.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: April 19, 2013